# COMMONWEALTH OF VIRGINIA



RICHMOND CITY CIRCUIT COURT
Civil Division
400 NORTH 9TH STREET
RICHMOND VA 23219-1540
(804) 646-6506

Summons

To: ISSAC K WOOD MD
C/O VCU SCHOOL OF MEDICINE
1101 E. MARSHALL STREET
SANGER HALL
ROOM 1-071
RICHMOND VA 23298

Case No. 760CL13000084-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Friday, February 01, 2013

Clerk of Court: BEVILL M. DEAN

by _____
(CLERK/DEPUTY CLERK)

Instructions:


Hearing Official:


Attorney's name: FISHER, D HAYDEN
804-335-1270

VIRGINIA:
　　IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

HESHAM M. ABBAS

　　　　　　　　　　　　　　　　　　　　　　Plaintiff.

v.　　　　　　　　Case Number: CL13-0084

VIRGINIA COMMONWEALTH UNIVERSITY HEALTH SYSTEMS
　　AUTHORITY d/b/a Medical College of Virginia
and
CHRISTOPHER WOLEBEN, M.D.
and
ISSAC K. WOOD, M.D.
and
YONGYUE CHEN, M.D.
　　　　　　　　　　　　　　　　　　　　　　Defendants.

## COMPLAINT

COMES NOW the plaintiff, Hesham M. Abbas, by counsel, and for his Complaint against the defendants, avers the following:

1. Plaintiff is a former medical student at the Medical College of Virginia ("the school"). Defendant Virginia Commonwealth University Healthy Systems, d/b/a the Medical College of Virginia, is a political subdivision of the Commonwealth of Virginia and a public university and medical school which admitted Plaintiff to study medicine.

2. This is a claim for injunctive relief (readmission) and monetary damages proximately caused by the defendants' violations of law and the plaintiff's constitutional rights as set forth below.

3. In 2005, Plaintiff applied for admission to the school and was accepted as a student for the semester beginning August 14, 2006.

1

4. During Plaintiff's first two years of studies, Plaintiff excelled academically and was on track to graduate in accordance with the expectations of program.

5. Subsequent to the conclusion of his 2nd year of medical school, Plaintiff on June 24, 2008 was granted a year-long leave of absence from the school to pursue some research interests.

6. Plaintiff returned to the school on June 15, 2009 but on July 30, 2009, Plaintiff was granted administrative leave through December 18, 2009. Nevertheless, Defendant Wood informed Plaintiff in writing on August 21, 2009 that the promotions committee had met on August 19, 2009 and recommended he be dismissed because he had not taken the U.S. Medical Licensing examination Step 1 prior to the start of the M-3 year; and that Dean Jerome Strauss, III, M.D., Ph.D had concurred with this decision. Plaintiff was informed of his appeal rights. On October 26, 2009, Dean Strauss overturned said dismissal and instructed Plaintiff to take said exam by November 23, 2009.

7. Plaintiff returned from his leave of absence on January 4, 2010 and completed the Spring semester. On May 4, 2010, however, the school granted Plaintiff another leave of absence due to health reasons. Plaintiff returned to the school on August 2, 2010 after his physician delivered an opinion letter on July 27, 2010 clearing him to return to the school.

8. On October 4, 2010, the school and defendant Wood granted Plaintiff a leave of absence effective September 30, 2010 and conditioned his return on an opinion letter from his physician opining he was able to meet the Technical Standards required for the program of study; on November 5, 2010, Plaintiff's physician

2

opined Plaintiff was capable of meeting said standards but recommended Plaintiff be afforded additional leave before returning to school.

9. On November 8, 2010, Plaintiff returned to the school from his leave of absence.

10. On December 14, 2010, the school granted Plaintiff leave from school for personal reasons until January 3, 2011.

11. On January 4, 2011, Defendant Wood wrote Plaintiff, indicating awareness that Plaintiff's legal proceedings had not been resolved and apprising Plaintiff he would be presented to the promotions committee on January 12, 2011. He also advised Plaintiff orally that Plaintiff's leave of absence request had been granted.

12. On January 6, 2011, Plaintiff setup a meeting with Defendant Woleben for the purpose of discussing some unprofessional behavior he experienced with respect to some of his classmates. Midway through the meeting, Defendant Wood joined. Defendant Wood asked Plaintiff to accompany Defendant Woleben to the emergency room to be "examined"; Plaintiff reluctantly agreed. In the emergency room, Plaintiff saw defendant Chen who informed Plaintiff he needed to be institutionalized against his will. These individual defendants informed Plaintiff they were arranging for him to be transported to Riverside Psychiatric Hospital in Hampton, Virginia. Plaintiff called his mother in Beltsville, Maryland who immediately contacted the local police in Richmond and traveled to MCV. Defendant Chen, who had signed the order mandating Plaintiff be institutionalized, had left before the police arrived. A Richmond Behavioral Authority employee who had been called in by the hospital to sign-off on a temporary detainment order performed an independent and unbiased exam and

3

found no basis to hold Plaintiff and the hospital discharged him. Nevertheless, Plaintiff was held against his will for several hours. Seven days later, on June 13, 2011, the school dismissed Plaintiff.

13. On January 14, 2011, Defendant Wood wrote Plaintiff, notifying him the promotions committee had met on January 12, 2011 and recommended the school dismiss Plaintiff "due to not satisfying academic process"; and that Dean Strauss had concurred. This letter dismissal decision did not inform Plaintiff of his appeal rights. Nevertheless, Plaintiff subsequently met defendants Wood and Woleben to discuss the dismissal and they both told him there was nothing he could do to protest the decision and there were not any options by which he could return to the school to complete his studies. Plaintiff later retained counsel and protested the school's dismissal of him via a letter issued from counsel on September 6, 2012; Plaintiff received no response thereto.

### Count 1: Violation and Deprivation of Constitutional Rights

14. All prior allegations are restated.
15. Plaintiff possessed a property interest in his pursuit of a degree in medicine from the school at all times relevant.
16. Plaintiff was entitled at all times relevant to the protection against state action depriving him of life, liberty or property without due process of law or a denial of equal protection under the laws.
17. Plaintiff possessed a property interest ("the property interest") in his continued enrollment at the school free from arbitrary and capricious state action. The school violated Plaintiff's due process rights in said property interest as no

rational basis supported their decision to dismiss Plaintiff. Plaintiff had sought and obtained leaves of absence during each of the periods during which he did not participate in the school's medical program and excelled academically. Certainly Plaintiff did not deviate from any "academic process" of the school. The decision to expel Plaintiff was instead motivated by bad faith and ill will unrelated to Plaintiff's academic performance or personal comportment.

18. The school violated Plaintiff's procedural due process rights by dismissing him and depriving him of the property interest without affording him a hearing or any opportunity whatsoever to address the grounds for dismissal set forth within the dismissal letter. The school handbook, within the section, "Requirements for Promotion and Graduation: Appeal Process", sets forth an appeals process students like Plaintiff may follow when they have been suspended, dismissed or otherwise disciplined. The school significantly departed from its procedures insofar as it afforded Plaintiff no appeal rights, even contrary to how it had treated Plaintiff when Defendant Wood initially dismissed Plaintiff before being overturned by the school dean (the first dismissal letter informed Plaintiff of his appeal rights whereas the subsequent dismissal letter did not). Plaintiff was minimally entitled to a proceeding which achieves at least the rudiments of an adversary proceeding before being dismissed for alleged misconduct. Plaintiff was denied equal protection under the laws because the school did not allow Plaintiff to exercise his rights to appeal the school's decision to dismiss him to a higher authority—Plaintiff met with Defendants Wood and Woleben and they plainly stated to him he had no recourse whatsoever, contrary to school policy.

19. Plaintiff suffered actual prejudice as a proximate cause of the school's denial of his procedural due process rights as Plaintiff would have demonstrated at a hearing that no rational basis existed to dismiss him from the school.

20. To the extent the school contends it dismissed Plaintiff for academic reasons only, said contention is pretense for its real reason for dismissing (misconduct) as Plaintiff's academic record is impressive and at no time did he demonstrate a failure to adhere to the school's academic process. Further, the individual defendants' efforts to have Plaintiff institutionalized at a psychiatric hospital against his will show their motives were not only malicious but also that they targeted Plaintiff for alleged misconduct. Persons are not admitted to psychiatric hospitals against their will for want of academic performance.

21. Plaintiff's leaves of absence were sought by Plaintiff and granted by the school and it would violate Plaintiff's due process rights to retroactively dismiss Plaintiff for seeking and obtaining leaves of absences for personal reasons the school previously granted. Plaintiff reasonably relied on the school's assurance, implicit in its granting of said leaves of absences, that the leaves of absences would not later be cited as a basis to dismiss Plaintiff from the school. As a person in serious jeopardy of loss of the property interest, Plaintiff was entitled to notice of the case against him (alleged lack of academic process) and an opportunity to meet it.

22. The school's decision to dismiss Plaintiff was not careful and deliberate but, rather, impulsive, capricious and immediate. Additionally, the dismissal followed the school's bad faith and malicious effort to have Plaintiff admitted into a

psychiatric hospital forcibly and against his will without any medical justification therefore, demonstrating bad faith and ill will towards Plaintiff.

23. The school's decision to dismiss Plaintiff constituted a substantial departure from its procedural norms as to demonstrate the school did not actually exercise professional judgment when deciding to dismiss Plaintiff. Rather, the school acted out of its ill will and malice towards Plaintiff. The school did not arrive at its decision to dismiss Plaintiff in a fair and impartial manner only after careful and deliberate consideration.

24. As a proximate cause of the aforesaid, Plaintiff proximately suffered the loss of a property interest without procedural or substantive due process and Plaintiff should be reinstated (injunctive relief) to the school and allowed to complete his medical training.

## Count II: 1983 Action

25. All prior allegations are re-alleged.

26. Defendants Woleben, Wood and Chen, acting in their individual capacities, abridged and violated Plaintiff's constitutional rights, giving rise to a 1983 claim. Specifically, these individual defendants violated Plaintiff's due process and equal protection rights as alleged above under color of state law; and seized Plaintiff in violation of his constitutional rights.

27. As a proximate cause of these individual defendants' deprivation of Plaintiff's constitutional rights under color of state law, Plaintiff suffered damages which will be proved at trial including the loss of his career as a medical doctor, lost

wages, lost earning capacity, pain and suffering, emotional distress and damage to reputation.

28. The individual defendants acted recklessly, callously and maliciously; accordingly, the plaintiff seeks punitive damages from the defendants to punish them and deter them and others from engaging in similarly deleterious conduct.

29. Plaintiff seeks attorney's fees from the individual defendants pursuant to statute.

### Breach of Contract

30. All prior allegations are re-alleged.

31. Plaintiff offered to attend the school and pay tuition and the school accepted Plaintiff's offer, admitted him and received tuition payments therefore.

32. The law implies a covenant of good faith and fair dealing into every contract. The school had an obligation not to dismiss Plaintiff without valid cause and to afford him his the process rights guaranteed by the United States constitution and the appeal rights established by the student handbook.

33. The school breached its contract with Plaintiff by unlawfully and illegally dismissing him from school as alleged within the Complaint and not in accordance with the student handbook.

34. As a proximate cause of the school's breach of contract, Plaintiff suffered consequential and incidental damages in an amount to be proved at trial.

WHEREFORE, the plaintiff, by counsel, requests the Court grant him injunctive relief against the school and order he be re-enrolled in the medical school; compensatory damages against all defendants in the amount of $5,000,000; and punitive damages against the individual defendants in the amount of $350,000 per individual defendant.


Hesham M. Abbas

By Counsel

D. Hayden Fisher, Esquire
Fisher Clarke, PLC
P.O. Box 7321
Richmond, Virginia 23220
(804) 335-1270
(804) 482-2725 (facsimile)

9