IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

HESHAM M. ABBAS,
      Plaintiff,

v.                                      Civil Case No. 3:13CV147

CHRISTOPHER M. WOLEBEN *et al.*,
      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendants' motions to dismiss.[1] (Dk. Nos. 4, 10, and 20.)

The complaint contains three counts: (1) constitutional violations by the Medical College of Virginia, Health Sciences Division of Virginia Commonwealth University ("MCV"); (2) a claim under 42 U.S.C. § 1983 against Woleben, Wood, and Chen in their individual capacities; and (3) a breach of contract claim against MCV.

The alleged constitutional violations consist of: (1) deprivation of property without procedural due process of law, (2) deprivation of property without substantive due process of law (3) denial of equal protection, and (4) seizure of the plaintiff in violation of the Fourth Amendment.

---

[1] The defendants have filed three separate motions to dismiss: one, jointly, by Christopher M. Woleben and Isaac K. Wood (Dk. No. 4); one by Yongyue Chen (Dk. No. 10); and one by the Medical College of Virginia, Health Sciences Division of Virginia Commonwealth University (Dk. No. 20).

The Court grants the defendants' motions to dismiss. This case arises from the plaintiff's dismissal from medical school. The Court dismisses the two counts against MCV because MCV is not a "person" under 42 U.S.C. § 1983 and because the complaint does not allege a breach of contract. Alternatively, the Eleventh Amendment immunity protects MCV. The Court dismisses Count II against Woleben, Wood, and Chen because no constitutional violations occurred and, even if they had, qualified immunity protects the individual defendants.

## I. STATEMENT OF FACTS

In keeping with the appropriate motion to dismiss standard, the following facts come from the plaintiff's complaint and the Court has construed them in the manner most favorable to Abbas. MCV admitted Abbas to medical school in August 2006. After Abbas completed two years of medical school, MCV granted Abbas five leaves of absence over a two and a half year period from June 2008, to January 2011, for various personal and health reasons. In August 2009, MCV's promotions committee recommended Abbas's dismissal from medical school for failure to take the required licensing examination prior to the start of his third year. In October 2009, the Dean of MCV overturned the dismissal.

On January 4, 2011, Wood wrote to Abbas alerting him of an upcoming review by the promotions committee. On January 6, 2011, Abbas met with Woleben and Wood,[2] who asked the plaintiff to accompany them to the emergency room for an examination. Abbas reluctantly agreed and Chen[3] examined him. Chen informed the plaintiff that he needed institutionalization against his will and signed an order beginning the commitment process. A Richmond Behavioral

---

[2] Abbas never identifies Woleben's or Wood's positions at MCV, but the complaint seems to indicate that they serve as school administrators.

[3] Abbas never identifies Chen's position or relationship to MCV, but the Court infers that he serves as a physician or psychiatrist in the hospital's emergency room.

Authority employee subsequently examined the plaintiff and determined that Abbas did not need institutionalization. As a result, the hospital discharged Abbas after several hours.

On January 12, 2011, MCV's promotions committee met and recommended the school dismiss Abbas "due to not satisfying academic process." (Compl. ¶ 13.)  The letter did not inform him of his appeal right and Woleben and Wood subsequently informed the plaintiff that he could not protest the decision.

The plaintiff filed a complaint in the Circuit Court for the City of Richmond in January 2013, naming Woleben, Wood, Chen, and Virginia Commonwealth University Health Systems Authority ("VCU Health Systems") as defendants.  Woleben and Wood removed the claim to federal court on March 8, 2013, with the consent of the other defendants.  On March 15, 2013, VCU Health Systems filed a motion to dismiss noting that VCU Health Systems and MCV "are separate and distinct legal entities." (Dk. No. 9, at 5.)  In response to VCU Health Systems's motion, Abbas filed a motion asking the Court to substitute MCV for VCU Health Systems. (Dk. No. 15.) The Court granted this motion on March 27, 2013.

## II. STANDARD OF REVIEW

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001).  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, in other words, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). Although the Court must accept as true all well-pleaded factual allegations, the Court need not accept legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (1990)). The Court may also look to documents incorporated into the complaint by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

## III. DISCUSSION

### A. Claims Against MCV

Abbas alleges Counts I and III against MCV. Count I alleges "Violation and Deprivation of Constitutional Rights" (Compl. at 4.), and discusses "the school," MCV. Since MCV is not a "person" under § 1983, the Court must dismiss Count I. In Count III, Abbas alleges a breach of contract. Abbas does not identify which defendant Count III lies against, but the Court infers

that the only possible defendant to breach an alleged contract is MCV.  The Court will discuss these counts in turn.

*1. Constitutional Claims*

Congress created 42 U.S.C. § 1983 as a procedural remedy to allow suits to enforce constitutional rights.  "Section 1 of the Civil Rights Act of 1871, Rev. Stat. § 1979, now codified as 42 U.S.C. § 1983, creates a remedy for violations of federal rights committed by persons acting under color of state law." *Howlett v. Rose*, 496 U.S. 356, 358 (1990).

> It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.

*Monroe v. Pape*, 365 U.S. 167, 180 (1961) (overruled on other grounds).  Thus, the Court assumes that Abbas brings Count I, "Violation and Deprivation of Constitutional Rights," pursuant to § 1983.

Section 1983 only allows suit against

> [e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983 (emphasis added).  The Supreme Court has held that  "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  MCV is part of Virginia Commonwealth University, a state government entity.  Va. Code § 23-50.5.  Accordingly, since § 1983 is the remedy for constitutional violations by state actors and a state is not a person under § 1983, MCV cannot be

sued under § 1983.   Consequently, the Court dismisses Abbas's claims against MCV for alleged constitutional violations.

### 2. Breach of Contract Claim

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).   Additionally, well-settled contract law in Virginia states that "there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement." *Smokeless Fuel Co. v. W.E. Seaton & Sons*, 105 Va. 170, 52 S.E. 829, 830 (1906).

The complaint does not show the existence of a contract.   In his complaint, Abbas attempts to allege a contract because "Plaintiff offered to attend school and pay tuition and the school accepted Plaintiff's offer, admitted him and received tuition payment therefore." (Compl. ¶ 31.)   Further, Abbas states that MCV breached its contract by dismissing him "not in accordance with the student handbook." (Compl. ¶ 33.)   The Court ordered Abbas "to file with the Court the document on which he relies as creating a contract between the plaintiff and [MCV]." (Dk. No. 22.)   In response to the Court's Order, Abbas submitted only his application to MCV as well as his application for in-state tuition. (Dk. No. 22.)   Despite this submission, in his opposition memorandum to MCV's motion to dismiss, Abbas only argues that a contract exists because of MCV's student handbook. (Dk. No. 25.)   Regardless of which alleged contract Abbas intended to rely on, the Court must dismiss the breach of contract claim for failure to state a claim.

The documents submitted as "the contract on which [Abbas] relies"—his application to MCV and application for in-state tuition—fail to establish an enforceable obligation, or at least an obligation at issue here. These documents do not include any language stating that if MCV accepts Abbas's application, it cannot later dismiss him from the school. Similarly, the general statement that "Plaintiff offered to attend school and pay tuition and the school accepted Plaintiff's offer, admitted him and received tuition payment therefore" does not support a claim that later dismissing the plaintiff qualifies as a breach of contract. (Compl. ¶ 31.) Despite enrolling and paying tuition, people flunk out of school all the time.

Turning to Abbas's argument that MCV's student handbook forms an enforceable contract, this Court has held that university handbooks and catalogs do not form a contract where the terms do not bind the university. *See Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 337 (E.D. Va. 2005) (performance by the university per the terms of a catalog were optional because of the catalog's disclaimer that the university may change its terms at any time); *see also Brown v. Rector & Visitors of Univ. of Va.*, No. 3:07CV00030, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008) *aff'd*, 361 F. App'x 531, 534 (4th Cir. 2010) (same for university handbook). In this case, Abbas alleges a contract with MCV based on the student handbook. The handbook states that "it is a useful guide . . . [and] proposed modifications are always welcome." (Dk. No. 21-1, Def. Mot. Dismiss Ex. A.) These terms do not bind MCV because they can change them at any time. Thus, the handbook does not establish a contract. Accordingly, because Abbas has failed to allege an enforceable contract between him and MCV, the Court dismisses the breach of contract claim against MCV.

### 3. Eleventh Amendment Immunity

In its motion to dismiss, MCV raises the defense of Eleventh Amendment Immunity. Abbas does not address this defense, even after the Court entered an order requiring the plaintiff to respond to MCV's motion to dismiss. His failure to oppose the defense is grounds alone to dismiss the case against MCV.

Even overlooking the plaintiff's default, and assuming he had stated a valid claim in Counts I or III, the Court would dismiss these claims based on MCV's Eleventh Amendment sovereign immunity. The Eleventh Amendment provides in relevant part that, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state . . . ." U.S. Const. amend. XI. While the Amendment refers only to citizens of another state, the Supreme Court has "established that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another State." *Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 280 (1973). The Court has also established that an action against "one of the United States" extends to state agents and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). In this case, MCV, as a division of Virginia Commonwealth University, an agent of the state, shares Virginia's Eleventh Amendment immunity. *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 363–64 (E.D. Va. 2004); *Haley v. Va. Commonwealth Univ.*, 948 F. Supp. 573, 577 (E.D. Va. 1996).

Congress can abrogate, and the States can waive, Eleventh Amendment immunity. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). A court may find a waiver "only where stated 'by the most express language or by such overwhelming implication from the text [leaving] no room

for any other reasonable construction.'" *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)).

Neither Congress, Virginia, nor MCV have waived sovereign immunity for the claims raised in the instant case. *See, e.g., Hunter v. Va. State Bar*, 786 F. Supp. 2d 1107, 1111 (E.D. Va. 2011) (Congress has not abrogated sovereign immunity for § 1983 cases); *Haley v. Va. Dep't of Health*, No. 4:12–CV–00016, 2012 WL 5494306, at *5 (W.D. Va. Nov. 13, 2012) ("[I]t is well settled that the [Virginia Torts Claim Act] does not waive Virginia's Eleventh Amendment immunity. . . . Moreover, the Supreme Court of Virginia has reaffirmed that [the Virginia Torts Claim Act]'s limited waiver does not extend to state agencies."); *Nofsinger v. Va. Commonwealth Univ.*, No. 3:12–CV–236, 2012 WL 2878608, at *12 (E.D. Va. July 13, 2012) (holding that the Eleventh Amendment barred breach of contract claims against Virginia Commonwealth University) *aff'd*, No. 12-1961, 2013 WL 1305672 (4th Cir. Apr. 2, 2013).

Additionally, MCV did not waive Eleventh Amendment by its role in the removal of this case to federal court. MCV was not a party at the time of removal;[4] the other defendants removed the case to federal court. The Court allowed the plaintiff to substitute MCV as a defendant in this action on March 27, 2013, after Abbas realized he had named the wrong party in his original complaint. As such, Abbas brought the claim against MCV in federal court. Accordingly, this Court can also dismiss the claims for constitutional violations and breach of contract against MCV based on MCV's sovereign immunity.

---

[4] Abbas sued VCU Health System Authority, a separate entity from VCU-MCV. Va. Code § 23-50.16:1, *et seq.*

### B. Claims Against the Individual Defendants, Wood, Woleben, and Chen

Although not specifically stated in the complaint, it appears that Count II alleges four constitutional violations giving rise to Abbas's § 1983 claim against each of the three individual defendants: (1) deprivation of property without procedural due process of law, (2) deprivation of property without substantive due process of law, (3) denial of equal protection, and (4) unwarranted seizure. Again, the plaintiff does not say which claims relate to which defendant. In reviewing the complaint, however, it appears that the first three alleged violations are targeted against Wood and Woleben, while the fourth specifically relates to Chen's actions.

### 1. Principles of Qualified Immunity

The individual defendants raised the defense of qualified immunity in their motions to dismiss. Again, Abbas failed to respond to this defense, which alone leads to dismissal. Further, an analysis of the merits of the qualified immunity defense as applied here also leads to dismissal.

Qualified immunity protects a government official from liability in § 1983 actions arising from the performance of discretionary actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies so long as the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The analysis of a qualified immunity claim entails two steps. First, the court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Bailey v. Kennedy*, 349 F.3d 731, 739 (4th Cir. 2003). Then, the court must determine whether, at the time of the violation, a reasonable person in the defendant's position would know that his actions would violate a clearly established right. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995). A court, however, has flexibility in the order in which it must

10

perform this analysis. "[J]udges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see Walker v. Prince George's Cnty.*, 575 F.3d 426, 429 (4th Cir. 2009).

At the time of the official's actions, the constitutional right allegedly violated must be clearly defined in a concrete factual situation such that its contours are clear, unmistakable, and applicable to the precise conduct at issue. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The Court should focus upon the right, not at an abstract level, but at the level of the specific conduct in question. *Simmons*, 47 F.3d at 1385. As the Fourth Circuit has said, the doctrine exists so that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

### 2. Deprivation of Property without Procedural Due Process of Law[5]

### a. No Constitutional Violation Occurred

First, Abbas alleges a violation of his property interest without procedural due process of law. When evaluating an alleged due process violation, the Supreme Court recognizes a

---

[5] In Abbas's opposition memorandum, he says that "[d]ismissals such as Plaintiff's can implicate a student's liberty or property interest in their continued enrollment within an academic institution." (Dk. No. 12, Pl.'s Mem. Opp'n 3 (citing *Herron*, 366 F. Supp. 2d at 358)). The discussion following the statement, however, focuses on a student's property interest. Similarly, Abbas alleges in his complaint that he possessed a property interest. (*See, e.g.*, Compl. ¶ 17.) Thus, the Court need not determine whether a liberty interest exists in continuing education and will focus solely on Abbas's argument regarding a protected property interest. Additionally, Abbas does not cite to any law recognizing a liberty interest in continuing education. The closest discussion the Court finds of such a liberty interest comes from *University of Missouri v. Horowitz*, 435 U.S. 78, 84–85 (1978), where the Supreme Court only assumes, without deciding, that a student possessed a liberty interest before dismissing the student's due process claim. This assumption does not suffice to establish a protected liberty interest required for a due process violation.

"familiar two-part inquiry: we must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was [he] due." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

For a plaintiff to possess a property interest, he "clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Recent decisions in this Court have held conclusively that a student does not have a property interest in continuing enrollment in an educational program. *Davis*, 395 F. Supp. 2d at 335–36; *Nofsinger*, 2012 WL 2878608, at *6; *McCoy v. E. Va. Med. Sch.*, No. 2:11CV494, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012). Thus, Abbas's due process claims fail at the first part of the inquiry.

Abbas does not plead any factual allegations to support the existence of a property interest, but merely concludes that a property interest exists. (Compl. ¶ 15.) Additionally, Abbas provides no controlling precedent that a property interest exists in continuing education. Neither the Fourth Circuit nor the Supreme Court has ruled directly on the issue of whether a property interest exists in continuing education. Some courts have assumed a property interest for purposes of dismissal, but the courts dismissed each case on other grounds. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 222–23 (1985); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–85 (1978); *Butler v. Rector & Bd. of Visitors of the Coll. of William & Mary*, 121 F. App'x 515, 518 (4th Cir. 2005); *Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002); *see also Lewin v. Med. Coll. of Hampton Rds.*, 910 F. Supp. 1161, 1164 (E.D. Va. 1996) (finding a property interest "[f]or the purpose of disposing of the instant motion"). The Eastern District of Virginia *has* conclusively ruled on this issue, however, finding

that a property interest does not exist in continuing education. *See, e.g., Nofsinger*, 2012 WL 2878608, at *6. Thus, based on clear case law from this Court, the plaintiff does not have a property interest in continuing his medical education.

Additionally, in an attempt to get around clear case law, the plaintiff attempts to argue that a property interest exists because Abbas and MCV entered into a contract. As previously discussed in Section III(A)(ii), Abbas has not alleged sufficient facts to establish an enforceable contract. Accordingly, since no contract exists, it cannot form the basis for a property interest.

### b. Qualified Immunity Cloaks the Defendants

Furthermore, even if this Court decided that a property interest existed in Abbas's continuing education, qualified immunity cloaks the defendants from liability. No Fourth Circuit or Supreme Court precedent exists that clearly establishes a property interest in continuing education.

### 3. Deprivation of Property without Substantive Due Process of Law

### a. No Constitutional Violation Occurred

Second, Abbas alleges a violation of his substantive due process rights by Woleben and Wood. Similar to the procedural due process inquiry, a protected property interest must exist to support a claim for a violation of substantive due process. *See Davis*, 395 F. Supp. 2d at 335–36. Even if the Court were to assume the existence of a protected interest, the claim fails.

To establish a substantive due process violation, Abbas would need to demonstrate that the defendants' actions "were so arbitrary and egregious as to 'shock the conscience.'" *Butler*, 121 F. App'x at 519. *See also Horowitz*, 435 U.S. at 91–92 (reviewing substantive due process claim for "showing of arbitrariness or capriciousness"). To do this, Abbas would need to show "that there was no rational basis for the university's decision or must show that the dismissal was

motivated by bad faith or ill will unrelated to academic performance." *Tigrett v. Rector & Visitors of Univ. of Va.*, 137 F. Supp. 2d 670, 678 (W.D. Va. 2001) *aff'd*, 290 F.3d 620 (4th Cir. 2002) (quoting *Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 826 (W.D. Va. 1999)).

Based on the facts pled, Abbas does not show that Woleben or Wood acted arbitrarily or capriciously. In fact, by Abbas's own admission, neither Woleben nor Wood made the decision to dismiss Abbas from medical school; the promotions committee did. (Compl. ¶ 13.) Even if Woleben and Wood made the decision, a rational basis existed to dismiss Abbas from medical school. In five years, Abbas only completed a little over two years of medical school, taking five leaves of absence. Further, Abbas does not allege that he ever completed the licensing exam as required by MCV in overturning his initial dismissal from the medical school. (Compl. ¶ 6.) Thus, a rational basis existed for MCV to dismiss Abbas from medical school.

### b. Qualified Immunity Cloaks the Defendants

Even if this Court decided that a property interest existed in Abbas's continuing education and that Wood and Woleben made an arbitrary and capricious decision in dismissing Abbas from medical school, qualified immunity cloaks the defendants from liability. As previously stated, no Fourth Circuit or Supreme Court precedent exists that clearly establishes a property interest in continuing education. Additionally, the decision to dismiss a student who has taken longer to complete two years of medical school than most students take to complete the four-year program does not violate a clearly established constitutional right. Accordingly, the Court dismisses Abbas's claim of substantive due process.

14

#### 4. Denial of Equal Protection

##### a. No Constitutional Violation Occurred

Third, Abbas alleges a violation of his equal protection rights by Woleben and Wood. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Nofsinger*, 2012 WL 2878608, at *9 (quoting *Equity in Athletics v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011)). The Court dismisses the plaintiff's equal protection argument because the complaint fails to allege that MCV treated Abbas differently from others similarly situated. In fact, the plaintiff does not provide any factual allegations to support his equal protection claim.

To the extent Abbas attempts to proceed under a class-of-one theory to state an equal protection claim, this claim also fails. "When proceeding under a class of one theory, a plaintiff must allege 'that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Nofsinger*, 2012 WL 2878608, at *10 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). This Court has held that "the public education context [is a] . . . poor fit for class-of-one equal protection claims due to the inherently discretionary decision-making that occurs there." *Nofsinger*, 2012 WL 2878608, at *11; *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 592–93 (2008) (class-of-one equal protection claim not cognizable in context of public employment). Thus, no constitutional equal protection violation occurred.

##### b. Qualified Immunity Cloaks the Defendants

Although the Court cannot conceive a possible equal protection violation based on Abbas's complaint, even if the Court determined that Wood or Woleben's actions violated the

Equal Protection Clause, qualified immunity cloaks the defendants from liability. Abbas provides no support for the allegation that a school administrator communicating with a student about his dismissal violates a clearly established constitutional right.

### 5. Unwarranted Seizure

#### a. No Constitutional Violation Occurred

Lastly, Abbas alleges an unwarranted seizure by Chen in violation of the Fourth Amendment. Supreme Court precedent holds that "a Fourth Amendment seizure . . . [occurs] only when there is governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). "Seizure" alone, however, "is not enough for § 1983 liability; the seizure must be 'unreasonable.'" *Id.* at 599; *see also* U.S. Const. amend. IV.

First, the plaintiff does not plead sufficient factual allegations to show a termination of Abbas's freedom of movement. According to the complaint, Abbas voluntarily went to the emergency room for an examination and saw Chen. (Compl. ¶ 12.) Although Chen signed an order to institutionalize the plaintiff, the hospital released him after a subsequent evaluation. (*Id.*) No factual allegations in the complaint support the contention that Chen actually physically restrained or restricted Abbas from leaving.

Second, even if the Court assumes a seizure took place, the complaint fails to include any allegations that Chen *unreasonably* seized Abbas. "To determine whether such a seizure is reasonable, the extent of the intrusion on the suspect's rights under that Amendment must be balanced against the governmental interests . . . ." *Tennessee v. Garner*, 471 U.S. 1, 2 (1985). Although most often applied in the context of law enforcement officials, the same standard can extend to other contexts. For example, the Second Circuit has held that confinement of a patient

16

with mental health issues "was not unconstitutional . . . because the hospital staff had reasonable grounds to believe that she was a danger to herself or to others." *Anthony v. City of N.Y.*, 339 F.3d 129, 142 (2d Cir. 2003).

According to the facts pled in the complaint, the Court cannot plausibly construe Chen's actions as unreasonable. Chen conducted a medical evaluation on a voluntary patient and determined that Abbas needed institutionalization. Abbas harps on the fact that the Richmond Behavioral Authority employee reached a different conclusion than Chen on the need to institutionalize Abbas. But a difference of opinion among professionals does not make an action unreasonable.

In Virginia's civil commitment process, "a person designated by the community services board who is skilled in the diagnosis and treatment of mental illness and who has completed a certification program approved by the Department," such as the Richmond Behavioral Authority, must undertake an evaluation before emergency custody or involuntary temporary detention of a mentally ill person occurs. *See* Va. Code § 37.2-808 to -809. Accordingly, the hospital and Chen followed state law by calling for an evaluation by the Richmond Behavioral Authority. Thus, these factual allegations do not meet the Fourth Amendment standard for unreasonable seizure; accordingly, the Court finds no constitutional violation.

### b. Qualified Immunity Cloaks the Defendant

Even if the Court found that an unreasonable seizure took place, qualified immunity protects Chen.[6] The plaintiff fails to come forward with any case law that would lead this Court

---

[6] Chen raises the argument in his motion to dismiss that no facts in the complaint allege that Chen worked for a state institution. If Chen does not work for a state institution, § 1983 does not apply, barring this claim against Chen. Assuming, however, that Chen works for the State, he acted under the color of state law in his professional capacity, which entitles him to qualified immunity. *See West v. Atkins*, 487 U.S. 42, 52 (1988).

to the conclusion that a physician conducting a medical examination on a voluntary patient and having the patient wait for further examination establishes a violation of a clearly established right. Accordingly, the Court dismisses Abbas's claim of unreasonable seizure.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: <u>September 18, 2013</u>

Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

18